UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QOC I LLC, | ) | Case No. 10-40153 |
| | ) | |
| | ) | Hon. Paul G. Hyman |
| Debtor. | ) | |

**MOTION OF WELLS FARGO SECURITIES, LLC AND
WELLS FARGO BANK, N.A. FOR ENTRY OF ORDER DISMISSING CASE**

Wells Fargo Securities, LLC ("Agent") and Wells Fargo Bank, N.A. (in its individual capacity, the "Lender" and collectively with Agent, "Wells Fargo"), by and through their undersigned attorneys, respectfully move the Court for entry of an order dismissing the bankruptcy case of QOC I LLC ("Debtor") pursuant to 11 U.S.C. § 1112(b).  In support of this motion, Wells Fargo states as follows:

**Procedural and Jurisdictional Background**

1.   On October 1, 2010 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code in this Court.  The Debtor is in possession of its assets as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors has been appointed in this case.

2.   This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in the Motion is Section 1112(b) of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure 1018(f), 2002(a)(4) and 9014 are applicable.

**Factual Background**

3.     At its core, this case is nothing more than a two-party dispute over the disposition of 283 life insurance policies securing repayment of $138.4 million in presently matured and owing indebtedness to Wells Fargo. The filing of this Chapter 11 case is yet another delay tactic that the Debtor has chosen to prevent Wells Fargo from exercising its rights as the Debtor's sole secured creditor (and one of its few creditors at all).[1]

4.     The Debtor is a single purpose entity whose business consists entirely of owning life insurance policies (each a "Policy" and, collectively, the "Portfolio") previously issued by insurance companies and sold in the life settlement market. Its day-to-day operations are managed and administered not through its own employees, but entirely by a related-party "Servicer" and "Loan Manager." The Debtor owes Wells Fargo at least $138,381,710.60 relating to $120,000,000 borrowed to finance the original acquisition of the Portfolio and payment of premium and other expenses[2] and amounts owing under terminated hedging agreements.[3] To secure the repayment of such obligations, the Debtor granted Wells Fargo a security interest in substantially all of its assets, including the Portfolio, the cash proceeds thereof, and all of its bank accounts.

5.     The Debtor does not engage in any business other than related to the ownership of the Portfolio; it neither manufactures nor sells anything; it has no employees and no place of

---

[1]  The factual background of this case is set forth in greater detail in Wells Fargo's Motion for Relief from the Automatic Stay, filed contemporaneously with this Motion and is incorporated herein by this reference.

[2]  A portion of the $120 million has been used to pay premiums, servicing fees and other portfolio maintenance expenses, as well as interest and hedge payments owed to Wells Fargo because the Debtor's cash flow was not adequate to pay such amounts. The Debtor's cash crisis results from, among other things, its exhaustion of the funds available under the Wells Fargo loan agreement.

[3]  The aggregate indebtedness due Wells Fargo consists of (a) $120 million in Advances, (b) approximately $2,455,460.60 in interest accrued on such amount through the Petition Date, (c) $15,476,250.00 in damages owing in connection with such hedging agreements which were terminated in accordance with applicable Bankruptcy Code authority as of October 5, 2010, and (d) more than $450,000 in attorneys' fees and expenses and other out-of-pocket expenses incurred by Wells Fargo as of the Petition Date.

business open to the public.  See Chapter 11 Case Management Summary of QOC I LLC ("Summary"), ¶ 3,11,12. Instead, the Debtor contracted with one of its indirect owners, Q Capital Strategies, LLC ("Q Capital"), to be the servicer and loan manager with respect to the Portfolio. It is Q Capital, as servicer, **not** the Debtor, that handles all aspects regarding the day to day management of the Portfolio, including, among other things (a) confirming arrangements for the payment of any premiums due with respect to the Policies, (b) tracking insureds and obtaining updated medical information, life expectancy reports, and other information, (c) preparing and submitting claims to, and acting as a liaison with the issuing insurance company on each Policy and (d) optimizing premiums, tracking premium payment activity, identifying potential Policy lapses, and other related matters.  See Declaration of Steven M. Shapiro ("Shapiro Decl."), ¶¶ 12,13.

6.    For the six months preceding the Petition Date, both before and after its indebtedness to Wells Fargo matured, the Debtor and Wells Fargo engaged in substantial negotiations in, what Wells Fargo believed to be, a good faith effort to reach a consensual restructuring of the indebtedness to salvage the Debtor's otherwise-doomed investment. However, despite the Debtor's repeated representations that it desired to reach a mutually acceptable solution to its long-standing liquidity and capital crisis, the Debtor suddenly filed the instant chapter 11 case because of its "high levels of debt" owed almost entirely to Wells Fargo and "the immediate issues caused by the maturity of the Loan."  See Shapiro Decl. ¶ 37.

7.    Simply put, when the facts of this case (many of them admitted by the Debtor in its very own papers) are compared against the very indicators of a "bad faith" filing that have marked Eleventh Circuit jurisprudence for over twenty years, the Debtor's chapter 11 case reveals itself to be nothing less than a textbook example of a bad faith filing.

## Relief Requested

8.      Here, cause clearly exists to dismiss the Debtor's bankruptcy case pursuant to Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").  As a threshold matter, it is well-settled that filing a bankruptcy case in bad faith provides the requisite "cause" under Section 1112(b) to dismiss a chapter 11 bankruptcy case.  See, e.g., In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988).

9.      Specifically, pursuant to *Phoenix Piccadilly* and its progeny, the Eleventh Circuit has determined that the following factors evidence a bad faith filing:

(i)     the debtor has only one asset;

(ii)    the debtor has few unsecured creditors who claims are small in relation to the claims of the secured creditors;

(iii)   the debtor has few employees;

(iv)    the debtor's asset is subject to foreclosure as a result of arrearages on the debt;

(v)     the debtor's financial problems involve essentially a dispute between the debtor and its secured creditors that can be resolved in state court, outside of bankruptcy; and

(vi)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

See Phoenix Piccadilly, 849 F.2d at 1394; accord In re State Street Houses, Inc., 356 F.3d 1345, 1346-47 (11th Cir. 2004) (affirming dismissal of case as a bad faith filing and stating that "district court properly followed line of cases holding that the Phoenix Piccadilly factors are appropriate guidelines"); see also In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir. 1987); In re Albany Partners, 749 F.2d 670, 673-74 (11th Cir. 1984).

10.     Here, by the Debtor's own admissions, this filing satisfies factors (i), (ii), and (iii), and the remaining key factors may be easily ascertained by a cursory review of the history in this matter.  Specifically, the Debtor admits that (i) it is a special purpose entity formed solely to hold

the Policies (Summary, ¶ 3.); (ii) Wells Fargo, the Debtor's only secured creditor, is owed at least $135 million,[4] while the Debtor's aggregate unsecured indebtedness (*including* insider debts) is not more than $52,000 (i.e., the Debtor's unsecured indebtedness accounts for less than .04% of its total indebtedness) (Summary, ¶ 8(b),(c)); and (iii) the Debtor does not have few employees; it has *no* employees (Summary, ¶ 11,12) and conducts no actual business operations other than passively holding title to the assigned Policies while all servicing of the Policies is undertaken by Q Capital, a related, but non-Debtor, entity (Summary, ¶ 3).

11. Moreover, given that: (a) this case arises solely because of the Debtor's inability to repay over $138.4 million in presently matured and owing indebtedness to Wells Fargo; (b) there was no foreclosure proceeding pending as of the Petition Date only because Wells Fargo was negotiating in good faith towards an attempted, consensual out-of-court restructuring with a party that apparently was not; and (c) the overwhelming amount of the Debtor's aggregate indebtedness (*i.e.* 99.96%) is owed to Wells Fargo, as well as the undisputed impairment afflicting the Debtor's liquidity and capital resources, the Debtor plainly lacks any reasonable prospect of ever being able to confirm a plan of reorganization over Wells Fargo's objection. Under these circumstances, the three other remaining "bad faith" factors set forth in Phoenix Piccadilly are also each met or effectively met here.

12. Simply, in this case, the Debtor filed its chapter 11 petition for what appears to be no other reason than to forestall Wells Fargo's inevitable exercise of its rights as a secured creditor in the Debtor's only asset, the Portfolio. This is not the purpose for Chapter 11 relief and is ample evidence of bad faith warranting dismissal. Indeed, by the Debtor's own admission, this case was filed merely to exploit the advantages provided to a debtor under the Bankruptcy

---

[4] As set forth above, the pre-petition amount of Wells Fargo's indebtedness actually is at least $138.4 million.

Code while it pursues a more favorable restructuring of its obligations to Wells Fargo. (Cash Collateral Motion, FN 6, p.7 "the Debtor filed this Chapter 11 case to restructure the terms of the loan on terms with which it can comply"). This case qualifies as a bad faith filing pursuant to the traditional standards established and repeatedly followed in this Circuit. See, e.g., Singer Furniture Acquisition Corp. v. SSMC Inc., 254 B.R. 46, 52 (M.D. Fla. 2000) (holding that the bankruptcy record was "replete with evidence" of bad faith factors where (1) "[the debtor] itself concedes that it is a holding company that is not engaged in any business and has no employees"; (2) had only two other reported creditors at the time it filed its petition; and (3) its "financial problems consisted primarily of its disputes with [its sole secured creditor]").

13.   There is simply no doubt when examined against the multiple factors set forth in *Phoenix Piccadilly* that the Debtor's case was filed only "to delay or frustrate the legitimate efforts" of Wells Fargo to enforce its rights in the Portfolio. Phoenix Piccadilly, 849 F.2d at 1394. The Policies have a present market value of not more than $100 million, not nearly the $160-$165 million range the Debtor suggests and well below the $138.4 million in indebtedness they secure. However, even if the Debtor's valuation of the Policies in the $160-$165 million range as set forth in its papers was accurate (which it is not)[5], and the Debtor was able to show that it had equity in the Portfolio (which it does not), the Debtor's case must still be dismissed. See Phoenix Piccadilly, 849 F.2d at 1395 (finding that the bankruptcy court properly dismissed a debtor's bad faith filing despite its possible equity in the property or potential for successful reorganization because "[t]he possibility of a successful reorganization cannot transform a bad

---

[5]   As applied by the Debtor, the Debtor's valuation model does not produce an accurate present fair market valuation of the Policies for a number of reasons, including that (i) the Debtor's model applies a discount rate to the valuation of the Policies that is simply not representative of the current life settlement market and (ii) the life expectancy figures ascribed to the Policies at closing were nearly all revised by the medical underwriters to reflect detrimental material adjustments aggregating more than $20 million shortly after the Debtor had purchased its portfolio.

faith filing into one undertaken in good faith."); accord In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir. 1987) ("[A]ny proposal submitted by a debtor who filed [its] petition in bad faith would fail to meet section 1129's good faith requirements.")

14. Based on the foregoing, "cause" exists pursuant to 11 U.S.C. § 1112(b) and under Eleventh Circuit case law to dismiss this Chapter 11 case. Accordingly, Wells Fargo respectfully requests that this Court enter an order dismissing the Debtor's Chapter 11 Bankruptcy Case.

WHEREFORE, Wells Fargo, by and through undersigned counsel, respectfully requests that this Court enter an order dismissing the Debtor's Chapter 11 case and grant such further relief as may be just and proper.

[remainder of page intentionally left blank]

DATED:  October 6, 2010.

        Respectfully submitted,

        I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rules 2090-1(A) and 9011-4(A)(1).

        */s/ Franck D. Chantayan*
        Franck D. Chantayan
        Florida Bar No.:  878731
        Robert N. Gilbert
        Florida Bar No.:  310662
        CARLTON FIELDS, P.A.
        525 Okeechobee Blvd., Suite 1200
        West Palm Beach, Florida 33401
        Telephone:  (561) 659-7070
        Facsimile:  (561) 659-7368
        e-Mail:  fchantayan@carltonfields.com
        *Counsel to Wells Fargo Securities, LLC*
        *and Wells Fargo Bank, N.A.*

        and

        Thomas S. Kiriakos, Esq. (admission *pro hac vice* pending)
        Craig E. Reimer, Esq. (admission *pro hac vice* pending)
        Joshua M. Grenard, Esq. (admission *pro hac vice* pending)
        Mayer Brown LLP
        71 South Wacker Drive
        Chicago, Illinois 60606-4637
        Telephone: (312) 782-0600
        Facsimile: (312) 701-7711
        *Co-Counsel to Wells Fargo Securities, LLC*
        *and Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true copy of the foregoing *Motion of Wells Fargo Securities, LLC And Wells Fargo Bank, N.A. for Entry of Order Dismissing Case* has been furnished been served via electronic CM/ECF transmission this 6th day of October, 2010 to all parties on the attached service list.

      */s/ Franck D. Chantayan*
      Franck D. Chantayan
      Attorney

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113C-9<br>Case 10-40153-PGH<br>Southern District of Florida<br>West Palm Beach<br>Wed Oct  6 15:35:36 EDT 2010 | QOC 1 LLC<br>5901 Broken Sound Parkway, NW<br>Suite 200<br>Boca Raton, FL 33487-2725 | Wells Fargo Bank, N.A.<br>Attn: R. Gilbert/F. Chantayan Esqs<br>525 Okeechobee Blvd #1200<br>West Palm Beach, FL 33401-6350 |
| Wells Fargo Securities, LLC<br>Attn: R. Gilbert & F. Chantayan Esqs<br>525 Okeechobee Blvd #1200<br>West Palm Beach, FL 33401-6350 | Delaware Division of Revenue<br>8th Floor<br>820 N. French Street<br>Wilmington, DE 19801-3509 | Deloitte Tax LLP<br>Deloitte Tax LLP 200 South Biscayne Blvd<br>Miami, FL 33131-2310 |
| Habersham Funding, LLC<br>Building 11, Piedmont Center<br>3495 Piedmont Road NE, Suite 910<br>Atlanta, GE 30305 | Internal Revenue Service<br>7850 Sw 6th Ct<br>Plantation, FL 33324-3210 | Mayer Brown LLP<br>230 South LaSalle Street<br>Chicago, IL 60604-1404 |
| Office of the US Trustee<br>51 S.W. 1st Ave.<br>Suite 1204<br>Miami, FL 33130-1614 | Q Capital Strategies, LLC<br>5901 Broken Sound Parkway, NW<br>Suite 200<br>Boca Raton, FL 33487-2725 | Securities And Exchange Commission<br>3475 Lenox Road N.E. # 1000<br>Atlanta, GA 30326-3235 |
| State Of Florida Department Of Revenue<br>Po Box 6668<br>Tallahassee, FL 32314-6668 | Towers Watson Risk Consulting, Inc<br>901 North Glebe Road<br>Arlington, VA 22203-1853 | United States Trustee - Miami<br>51 SW 1st Ave # 1204<br>Miami, FL 33130-1614 |
| Wells Fargo Bank NorthWest NA<br>One Wachovia Center<br>301 South College Street<br>Charlotte, NC 28202-6002 | David M Bass<br>25 Main St<br>Hackensack, NJ 07601-7015 | Gerald H Gline<br>25 Main St<br>Court Plaza N<br>Hackensack, NJ 07601-7015 |
| Glenn D Moses Esq<br>100 SE 2 St #4400<br>Miami, FL 33131-2118 | Heather L Harmon Esq<br>100 S.E 2 St #4400<br>Miami, FL 33131-2118 | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)West Palm Beach

End of Label Matrix
Mailable recipients    19
Bypassed recipients     1
Total                  20